THE STATE OF IOWA, Appellee, v. CLARENCE PROCTOR, Appellant.

Practice: ARGUMENT TO JURY IN CRIMINAL CAUSE: MISCONDUCT OF COUNSEL FOR STATE. Where the prosecuting attorney in a criminal cause made remarks in his closing argument to the jury which were calculated to encourage violations of the law, inflame the minds of the jury against the defendant, and lead them to regard their duty lightly, and to find the defendant guilty, whether such verdict was justified by the evidence and the charge of the court or not, held, that the defendant was entitled upon such ground to a new trial.

*Appeal from Fremont District Court.*—HON. H. E.
DEEMER, Judge.

TUESDAY, OCTOBER 25, 1892.

THE defendant was convicted of the crime of
seduction, and adjudged to be imprisoned in the peni-
tentiary at Ft. Madison, at hard labor, for the term
of two years.   From that judgment he appeals.
*Reversed.*

*Albert R. Anderson* and *Walter L. Anderson,* for
appellant.

*P. H. Hoop,* County Attorney, for the State.

ROBINSON, C. J.—This cause is submitted on a
transcript of the record and printed arguments of coun-
sel.   On a former submission it was dismissed, for the
reason that the record failed to show that an appeal
had been taken.   After the opinion was filed, the judg-
ment of dismissal was set aside, on a showing that an
appeal had in fact been duly taken, and that the failure
of the record to show it was due to an oversight on the
part of the clerk of the district court, without fault on
the part of the defendant or his attorneys.   The case is
now submitted for a decision on the merits.

The appellant discusses certain questions founded
upon rulings of the court in regard to the admission of
evidence, and upon portions of the charge to the jury,
which we do not find it necessary to determine, for the
reason that they may not arise on another trial.

The chief ground upon which the appellant relies
for a reversal of the judgment of the district court is
alleged misconduct on the part of the attorney who on
the trial in the district court made the closing argu-
ment to the jury on the part of the state.   The prose-
cuting witness was nineteen years of age at the time of

the alleged seduction.   She testifies, in effect, that she
received the attention of defendant as a suitor, and
accompanied him to and from religious and social gath-
erings, and received him at her brother's house fre-
quently during the latter part of the year 1888 and the
first part of the year 1889; that they became engaged to
marry each other, and that in consequence of that
engagement they had sexual intercourse three times, and
that such intercourse resulted in the birth of a child.
The sexual intercourse is admitted by the defendant,
but the alleged agreement of marriage is denied.

The argument in question is set out at length in
the record, and is a very able and adroit presentation
of the views of the attorney who made it.   The first
part is devoted to an explanation of the duties of the
attorney as a representative of the state, and exhibits
much anxiety lest he should transcend the bounds of
propriety in presenting the case on behalf of the state,
and thereby do an injustice to the defendant.   The
fact that it was not his duty to secure a conviction if
the defendant was innocent of the crime of which he
was accused was given due prominence, and an unusu-
ally large portion of the argument was devoted to an
attempt to convince the jury that he was wholly dis-
interested in the matter, excepting to aid in securing a
result which should do exact justice in the case.   What
was said upon that subject was expressed forcibly and
well, and was calculated to win the confidence of the
jury, and incline them to give weight to the remainder
of the argument.   The attorney then devoted some
time to a discussion of the evidence in a manner which
was justified by the facts it tended to prove, but, as
he proceeded, his remarks began to manifest a vindic-
tive spirit towards the defendant, and finally references
to him were coupled with opprobrious epithets,
expressed in language unwarranted by anything con-
tained in the record, some of which we do not care to

repeat.  Among other statements he made were the following:   "She [referring to the prosecuting witness] ought to have sent a bullet crashing through his black heart, and sent him down to the infamous depths of hell, from which he came; and I say if she had done that, there could not be a jury of twelve men impaneled in this county but what would have said to her: 'Go hence; you have done well.'  Yes; ought to have followed that boar hog up and insisted on matrimony. * * * Why, I say, in place of tagging him over the country, and wanting him to marry her, she ought to have killed him.  And when she told her brokenhearted mother, her gray-haired father, of the situation she was in, if John W. Jackson had taken his revolver or his shot gun, and hunted up the villain and scoundrel that had been the author of his daughter's infamy and ruin, and sent a bullet crashing through his brain, I say there is not a jury in Fremont county but what would have said:  'John Jackson, God help you; you could not have done better.'"   Also:   "Has not Clarence Proctor done just what the law said he would do, when it said the presumptions were and the chances were that ninety-nine times in one hundred he would commit perjury if he got on the stand at all?" Also:   "I wish we had a right to leave this case to the verdict of the community; but we haven't.  We are leaving it to these twelve men."

These and other remarks of a similar nature were designed to inflame the minds of the jurors against the defendant, and to secure from them a verdict of guilty, without regard to the value and weight of the evidence. They were calculated to encourage violations of the law, and to lead the jury to regard their duty lightly, and to find the defendant guilty whether they were justified in so doing by the evidence and the charge of the court or not.  It is true the attorney said that it would not have been lawful for the father to shoot the

defendant, and that he did not recommend that course, but the explanation could have had little influence in counteracting the effect of the inflammatory appeals which the attorney had made, and is entitled to little weight. The reference to the supposed feeling of the community against the defendant was without excuse, and the statement to the effect that the law presumes that the defendant had committed perjury was wholly unwarranted. The remarks we have quoted and others of a similar character, were not only objectionable, but they were of a nature to work great prejudice to the defendant. This is especially true for the reason that they were made by a representative of the state, who had expressed a just estimate of his duties, and a desire to avoid convicting the defendant unless his guilt had been proven; and for the further reason that the attorney for the defendant had no opportunity to respond to them. It is not always easy to discriminate between what is and what is not legitimate argument in a cause based upon facts disclosed upon the trial and claims made by counsel, and in most cases much is necessarily left to the sound discretion of the trial court. But in this case the violation of the rules which govern such arguments were so serious and so persistent, notwithstanding objections made by the defendant, that we do not think the verdict which they aided to procure should have been permitted to stand. As sustaining, to some extent, the conclusion we reach, see *State v. Williams,* 63 Iowa, 140; *People v. Quick,* 58 Mich. 322; 25 N. W. Rep. 302; *Ferguson v. State,* 49 Ind. 33; *Stone v. State,* 22 Tex. App. 191; 2 S. W. Rep. 585; *Cartwright v. State,* 16 Tex. App. 489; *Martin v. State,* 63 Miss. 505; *Coble v. Coble,* 79 N. C. 590; 4 Am. and Eng. Encyclopedia of Law, 875.

The judgment of the district court is REVERSED.