TRASE V. MAINZ *vs.* BENEDICT B. LEDERER.

PROVIDENCE—JULY 8, 1899.

PRESENT : Matteson, C. J., Stiness and Tillinghast, JJ.

(1) *Improper Language by Counsel. New Trial.*

The following language was used by counsel in his argument: "And a man who had the least spark of honor in his body (which [he] has not) would have responded to such an appeal. Could you or I resist an appeal like that? Could any man but one of the most brutish, one of the vilest and most lascivious—" Counsel on the other side : "That was an appeal for money." "My friend on the other side says that is an appeal for money. Gentlemen, outside of New England, if that man had done what he has to this woman he would have been hanging, or he would have had daylight let into him by many indignant citizens. Read the newspaper and find where the men outside of Rhode Island are allowed to live where they have done what [he] has done":—

*Held*, that the first part related to testimony in the case and could not have had an improper influence on the jury.

*Held*, further, that the rest of the language meant no more than that, while in some places cases similar to the one at trial would be summarily dealt with, yet in this State the remedy was the more orderly one of seeking damages in court, and the words being unpremeditated and allowance being made for inconsiderate vehemence, there being ample ground for the verdict and no reason to believe the jury was moved to give it by reason of feelings of animosity or prejudice, a new trial would not be granted.

(2) *New Trial. Evidence Known at Time of Trial.*

Where a party has knowledge previous to the trial of the claim of the other side and personal knowledge of facts which constitute an important element to rebut the claim and fails to offer such evidence by

deposition or otherwise at the trial, a new trial will not be granted to allow the production of the evidence.

(3)  *Newly-Discovered Evidence.*

Newly-discovered evidence which does not relate to the merits of the case, but only to the credibility of a witness, does not furnish ground for a new trial.

(4)  *Aggravation of Damages.   Breach of Promise of Marriage.*

In an action for a breach of promise of marriage the seduction of the plaintiff by the defendant may be shown in evidence in aggravation of damages.

*Perkins* v. *Hersey,* 1 R. I. 493, explained and limited.

ASSUMPSIT for breach of promise of marriage.  Heard on petition of defendant for a new trial on the grounds stated in the opinion.   New trial denied.

STINESS, J.    After verdict for the plaintiff in an action for breach of promise of marriage, the defendant asks for a new trial upon several grounds.    As to the claim that the verdict is against the evidence, it is enough to say that a full reading of the record shows that the jury might reasonably have found in the defendant's conduct strong corroboration of the plaintiff's testimony of a promise of marriage.    While many of the common conventionalities were wanting, still it was a question of fact for the jury and the record shows that the finding had a sufficient support.    Several exceptions were taken to the admission of testimony, which were not pressed in the argument and which were not of sufficient importance to discuss.    The defendant refers to one, only, in his brief ; but as the record shows no exception on that point and as the fact of an exception taken does not appear by affidavit, pursuant to Gen. Laws R. I. cap. 250, § 15, we cannot consider it.    Another ground for a new trial is the use of improper language by the plaintiff's attorney in his argument to the jury.    Referring to an appeal written by the plaintiff to the defendant for the care of her child, the plaintiff's attorney said :  "And a man who had the least spark of honor in his body (which Mr. Lederer has not) would have responded to such an appeal.    Could you or I resist an appeal

like that? Could any man but one of the most brutish, one of the vilest and most lascivious—

MR. LAPHAM. That was an appeal for money.

MR. OWEN. My friend on the other side says that is an appeal for money. Gentlemen, outside of New England, if that man had done what he has to this woman he would have been hanging, or he would have had daylight let into him by many indignant citizens. Read the newspaper and find where the men outside of Rhode Island are allowed to live where they have done what Lederer has done.

MR. MILLER. I desire to note an exception to that statement of the counsel."

(1)     While we cannot commend such remarks as a good form of convincing argument, we are unable to believe that they could have influenced the jury improperly. The first part related to the testimony and, albeit with considerable warmth, was a statement that a man who would not respond to such an appeal must be brutish, vile, and lascivious. Thereupon came the interruption, from counsel on the other side, that it was an appeal for money. Then followed the words excepted to, as a reply to the suggestion, that while, in some places, such cases would be summarily dealt with, yet in Rhode Island the remedy was the more orderly one of seeking damages in court. If this had been said no one would say that it was improper, and the words used seem to us to have meant nothing more. They were not premeditated, and being given on the spur of the moment, in reply to an insinuation that the plaintiff was simply seeking money, some allowance should be made for inconsiderate vehemence. Especially is this so when there is ample ground for the verdict and no reason to believe that the jury was moved to give it by reason of feelings of animosity or prejudice. Many cases are cited by the defendant where verdicts have been set aside for intemperate and improper words addressed to a jury by counsel, and with such a practice we fully agree. But an examination of the cases shows them to be quite different from the case at bar. They fall into three general classes: (1) Appeals to local prejudice or to particular jurors. School Town v. Shaw, 100

Ind. 268 ; *Gibson* v. *Zeibig*, 24 Mo. Ap. 65 ; *Bessette* v. *State*, 101 Ind. 85. (2) Criminal cases, where the attorney for the State reviled the defendant in a way which was liable to excite prejudice against him and to deprive him of a fair trial on the charge for which he was indicted. *People* v. *Fielding*, 158 N. Y. 542 ; *State* v. *Fischer*, 124 Mo. 460 ; *State* v. *Proctor*, 86 Ia. 698. (3) Statements to the jury, outside of the evidence in the case, of facts derogatory to a party and likely to warp the minds of jurors against him. Most cases are of this class, an example of which may be found in *Parker* v. *Prov. Carriage Co.*, 20 R. I. 378. While this classification may not be exhaustive, it does not include the present case ; and following the rule, generally admitted, that a new trial should not be granted where a case is reasonably clear on its merits, we see no reason to disturb the verdict on this ground.

(2)     The defendant also asks for a new trial on the ground of newly-discovered evidence. The affidavits do not show newly-discovered evidence, but evidence which the defendant was unable to obtain from witnesses out of the State, to rebut unexpected testimony put in by the plaintiff. But, taking this ground of the petition liberally, we think that the testimony which he seeks to offer is not such as to warrant the granting of a new trial.

The defendant knew, all along before the trial, that the plaintiff claimed that a child had been born in April, 1897. He knew that she had claimed to be with child by him in the fall of 1896. He went with her to consult Dr. Stedman of Boston December 8, 1896, as he now seeks to prove, instead of September, as the plaintiff testified, and that the doctor could not determine whether she was pregnant or not at that time.

The new testimony offered is the statement of the doctor that if conception had taken place between the middle of June and the first of August the fact would then have been evident. The only effective use of this testimony would be to show that the plaintiff was not with child, and that her claim was a sham. It was an important element of defence, and the defendant should have produced it at the trial. If he

knew that he had been with her to a doctor as late as November or December, and that evidence of pregnancy was not apparent, he should have offered the evidence by deposition or otherwise. With his knowledge of what would probably . be claimed at the trial and of his own visit with her to the physician and its result, it is too late to ask for a new trial on that ground.

The affidavit of Peter J. Smith that the records of New York do not show a return of the birth, as claimed, is of a purely negative character, which, in view of the positive character of testimony adduced, would not be likely to affect the result.

(3)    The testimony of Richard Martin is too remote in its bearing and of too slight importance to warrant a new trial. The purpose of it is to rebut the testimony of Dr. Dillon of New York that Martin offered him $300 if he would not come to Providence as a witness. It does not relate to the merits of the case, but only to the credibility of a witness. *Jones v. N. Y., N. H. & H. R. R.*, 20 R. I. 212; *Timony v. Carey*, 20 R. I. 257. The defendant denied any authority on his part for such an offer.

(4)    The only other grounds relied on for a new trial are that the damages awarded were excessive and that the court erred in refusing to instruct the jury that the damages could not be affected by the fact that the plaintiff was seduced by the defendant. The defendant's property, over and above his debts, was shown to be at least $75,000, and the damages awarded were $12,500. We consider these two grounds together, because if the fact of seduction can be allowed in aggravation of damages, it can hardly be claimed that the damages in this case, though large, were excessive. We think that the request was rightly refused. The rule that seduction may be shown in aggravation of damages for a breach of promise of marriage is well-nigh uniform in this country, Pennsylvania and Kentucky alone opposing it. Some States require an averment of special damage on this account. Numerous cases following the rule are cited in 4 Am. & Eng. Ency. L. 2 ed. 898; Century Digest, Vol. 8, p. 951; 3 Sutherland on

Damages, §.984, n.  This State is cited against the rule on the strength of *Perkins* v. *Hersey,* 1 R. I. 493, on which the defendant now relies.  What is reported in that case is simply a charge to a jury, in which the court said : "The fact that the plaintiff was seduced you will not consider in this connection.  We have a statute which affords the plaintiff a remedy for the injury thus done to her, in a more appropriate form."

The only statute on the subject at that time was "An act concerning Crimes and Punishments," Dig. 1844, p. 392, § 78, which made seduction, by virtue of a promise of marriage, punishable with imprisonment not exceeding five years or a fine not exceeding five thousand dollars.  We are unable to see how such a punishment afforded "the plaintiff a remedy for the injury thus done to her, in a more appropriate form." The few cases, however, which hold that seduction cannot be shown to enhance the damages for a breach of promise of marriage, proceed upon the ground that the .plaintiff, being equally guilty with the defendant, cannot recover damages for an act to which she was a voluntary party.  The court doubtless had the principle of *particeps criminis* in mind, and meant no more than to say that, as there was a statute making seduction, by means of a promise of marriage, a crime, the plaintiff was precluded from a civil remedy.  But whatever force there may have been in that doctrine, it does not now .apply, for that statute, Pub. Stat. R. I. cap. 244, § 3, was repealed by Pub. Laws R. I. cap. 738, January, 1889.

With that statute out of the way, we come to the question, as a new one, whether the fact of seduction may be considered in assessing damages.  The generally accepted rule is in the affirmative, but aside from that we think that such a rule is reasonable and sound.  For mere seduction there can be no action, upon the principle *volenti non fit injuria.* *Conlon* v. *Cassidy,* 17 R. I. 518.  But, assuming seduction brought about solely through a promise of marriage, it clearly follows that the injury from the breach of promise is greater than it would otherwise have been.  The reason for the rule is well stated by Sutherland, *supra :* "An engage-

ment necessarily brings the parties into very intimate and confidential relations, and the advantage taken of them by the seducer is as plain a breach of trust in all its essential features as any advantage gained by a trustee, guardian, or confidential adviser who cheats a confiding ward, beneficiary, or client into a losing bargain. A subsequent refusal to marry the person whose confidence has thus been abused cannot fail to be aggravated in fact by the seduction."

Petition for new trial denied, and case remitted to the Common Pleas Division with direction to enter judgment on the verdict.

*F. P. Owen*, for plaintiff.
*S. S. Lapham and Miller & Carroll*, for defendant.