VERONA H. WELCH, Appellee, v. UNION CENTRAL LIFE INSURANCE COMPANY, Appellant.

**Certificate of Health:** FRAUD IN OBTAINING: *What is not.* To constitute obtaining a certificate of health, by an applicant for 1 life insurance, by fraud, it is not enough that his answers to the medical examiner be untrue, but he must have known them to be false, and the examiner must have been thereby deceived into issuing the certificate.

**Stating Issues to Jury:** *Harmless error.* The giving of the pleadings in full to the jury is harmless, the issues having also 2 been clearly stated to them.

**Misconduct of Counsel:** *Provocation.* Prejudicial remarks of 3 counsel are not excusable because provoked by opposing 4 counsel.

*Same.*   Remarks of counsel made in running comment during trial are on the asme footing as those made in argument.

*Constant objection needless.*   Where injury or prejudice is accomplished by the asking of improper questions and making of improper statement, it is not necessary to show objections made to every question asked and statement made.

*Appeal from Cedar Rapids Superior Court.*—HON. T. M. GIBERSON, Judge.

SATURDAY, MAY 31, 1902.

ACTION at law upon a policy of insurance issued by defendant company upon the life of one Otis S. Hogg. Trial to a jury, verdict and judgment for plaintiff, and defendant appeals.—*Reversed.*

*Maxwell & Ramsey,* and *Smith & Smith* for appellant.

*Jamison & Smyth* for appellee.

DEEMER, J.—This is the second time this case has been before us.   The first opinion will be found in 108 Iowa, 224. On the second trial a verdict was again returned for plaintiff, on which a judgment was rendered, from which this appeal was taken.   The issues were practically the same on the second trial as on the first.   Several matters are relied upon for a reversal, some of which were disposed of on the former appeal, and others arose upon the second trial.   Defendant pleaded fraud and conspiracy on the part of the plaintiff and the insured in obtaining the policy. This was denied by plaintiff, and this denial formed the real issue in the case.   Code, section 1812, reads as follows: "In any case where the medical examiner or physician acting as such, for any insurance company doing business in this state, shall issue a certificate of health, or declare the applicant a fit subject for insurance under the rules and regulation of such company, the

company shall be thereby estopped from setting up in defense of a suit on such policy that the assured was not in condition of health required by the policy, at the time of the issuing of such policy, except where the same is procured by or through the fraud or deceit of the assured." In referring to this matter when the case was first before us, we said: "Appellee insists that the words 'the same' refer to the certificate, and that the defendant must show, not only that the statements of the applicant were false and fraudulent, but that the examiner was deceived thereby. While the certificate may be competent and valuable as evidence, it is not a part of the contract, though the policy was issued in reliance thereon and upon the application. If the certificate was fraudulently procured, and the defendant was thereby deceived into issuing the policy, surely the policy as well as the certificate is not conclusive against the defendant as to the condition of the assured's health, if it, and thereby the policy, were secured by fraud, as alleged in the answer. The defendant is not estopped by this certificate from setting up the defense pleaded, and the certificate of itself affords no reason for ordering a verdict for the plaintiff. * * * While the certificate may be competent and valuable as evidence, it is not a part of the contract, though the policy was issued in reliance thereon and upon the application. If the certificate was fraudulently procured, and the defendant was thereby deceived into issuing the policy, surely the policy as well as the certificate is not conclusive against the defendant as to the condition of the assured's health, if it and the policy were procured by fraud." Instructions in harmony with these statements were asked by defendant, but were refused. In lieu thereof the trial court gave the following: "In the case at bar it is conceded that the assured, Otis S. Hogg, submitted to a medical examination by a physician, and that the policy in suit was issued and delivered, and that a statement or certificate was issued by said medical

examiner to the effect that the applicant, Otis S. Hogg, was a fit subject for insurance. You are instructed that this is conclusive upon the defendant company as to the condition of the health of the deceased, Otis S. Hogg, at the time of said examination and issuing of the policy in suit, unless you find from the evidence that said certificate of health was obtained from the physician by fraud and deceit of the said Otis S. Hogg, or that the plaintiff, her husband (Otis S. Hogg), Montgomery Bell, and Dr. J. E. Gilmore, or any one or more of them, and the examining physician entered into a conspiracy whereby the examination by said physician was collusively, falsely, and fraudulently issued. If you fail to so find, then your verdict should be for plaintiff; otherwise for the defendant. If you find that the evidence fails to establish the conspiracy as alleged by the defendant, you will next determine whether the examining physician, Dr. J. E. Gilmore, was deceived or misled by the assured, Otis S. Hogg, at the time of the examination, and by reason thereof made or issued the certificate; and if you find from the evidence that said medical examiner was not deceived or misled by the said Otis S. Hogg, and that the certificate of health was not obtained through the fraud and deceit of the assured Otis S. Hogg, then the certificate of health issued by the examining physician, Dr. J. E. Gilmore, is conclusive upon the company; but if you find that the certificate of health was obtained by or through the fraud and deceit of the said Otis S. Hogg, then said certificate is not conclusive upon the company." "In determing as to whether said certificate of health was obtained by the assured, Otis S. Hogg, by fraud and deceit, it is not sufficient that the answers of said Otis S. Hogg to the questions of the medical examiner were untrue, but the defendant must further satisfy you that the said Otis S. Hogg, when he made said answers, knew them to be false, and made them for the purpose and with the intent to mislead and deceive the

defendant company and the medical examiner, and that said medical examiner was thereby deceived into issuing said certificate of health." These instructions, while not exactly in harmony with what was said on the former appeal, clearly announce the law as we have interpreted it in various cases hitherto decided. See *Weimer v. Association*, 108 Iowa, 451; *Stewart v. Association*, 110 Iowa, 528; *Nelson v. Insurance Co.*, 110 Iowa, 600; *Peterson v. Association* 115 Iowa, 668. What was said on the former appeal must be viewed in the light of these cases, and with the thought in mind that all that was before the court on the former appeal was the correctness of the court's ruling directing a verdict for plaintiff. The exact points for decision in that case were accurately stated in the fourth division of the opinion, and the quotations we have made from the opinion were used arguendo to the claims made by the parties as stated in the opinion. The instructions given were in harmony with the cases above cited, and there was no error.

II. In stating the issues to the jury, the court copied the pleadings in full, which cover 11 pages of the printed abstract. The issues were simple, and could easily have been stated in language which, at most, would not have covered to exceed two printed pages. Time and again we have condemned this practice, and it is to be hoped that trial judges will in the future perform this important function of stating the issues with more care, so that a jury will not have to wade through a mass of to them almost unintelligible matter to find the real issues. See *Swanson v. Allen*, 108 Iowa, 421; *De Wulf v. Dix*, 110 Iowa, 557; *Robinson & Co. v. Berkey*, 100 Iowa, 142. However, we do not, as a rule, reverse upon this ground, in the absence of some showing of prejudice. If other parts of the charge state the real issues, so that the jury knows the exact points it has to decide, no prejudice results, and the error will be disregarded. *Keatley v.*

*Railway Co.*, 94 Iowa, 690; *Dorr v. Simerson*, 73 Iowa, 91; *Frank v. Davenport*, 105 Iowa, 591; *Walrod v. Webster County*, 110 Iowa, 353; *Meyer v. Button Co.*, 112 Iowa, 51. In the instant case the court gave the following among other instructions: "Under the foregoing issues the burden is upon the defendant to establish by a preponderance of the evidence the charges of fraud and conspiracy as alleged. By the preponderance of evidence is meant the greater weight or value of testimony, and not necessarily the greater number of witnesses." "The defendant having admitted that it issued and delivered the policy, and admitted the death of the assured and that proofs of loss were filed, * * * plaintiff is entitled to recover, unless the defendant has established the charge of fraud and conspiracy, or that the certificate of health was obtained from the examining physician by the fraud and deceit of the assured." These, it seems to us, so clearly stated the real points for decision, that the error in copying the pleadings was without prejudice.

III. Misconduct of counsel during the course of trial is complained of. We extract from the record the following, which, to say the least, shows a somewhat unusual course of procedure: Defendant, in examining the witness E. J. Lightfoot, found it necessary to identify Mr. Harvey Hogg, who had been walking with the assured at the time referred to by the witness. Defendant's counsel asked Harvey Hogg to stand up. Remarks by Mr. Jamison, plaintiff's counsel: "Let Harvey stand up. He needs corroboration. Mr. Smith: I want the record to show that the defendant's counsel objects to the remark made by the counsel for the plaintiff touching the witness Harvey Hogg as being misconduct on the part of counsel. Mr. Jamison: Plaintiff's counsel objects because nobody knows that Harvey Hogg is a witness, and the witness here upon the stand, when inquired of, has stated that he knew who it was that was with Harvey

Hogg, and all about it. So, we object to the efforts to make a grand-stand play out of Harvey Hogg. Mr. Smith: I ask, if the court please, that you admonish counsel to desist from such statements as he is now making in the presence of the jury touching the witness on behalf of the defendant." When the witness Harvey Hogg was shortly afterwards upon the stand, the following took place during his cross-examination by plaintiff's counsel: "Q. Now, when did you conclude to betray your sister? (Defendant objects to the question as incompetent, and for the further reason that it is misconduct to put such a question to the witness.) The Court: I don't think it is a proper question, Mr. Jamison. A. I concluded to come up and testify if they got an insurance on him. Q. Are you Harvey Hogg? A. I am Harvey Hogg. Q. Are you the one who was administrator of your father's estate? (Defendant objects, as not proper cross-examination, and immaterial. Objection overruled. Defendant excepts.) Q. Are you the one? A. I am one of them. Q. Are you the same one that took the proceeds of all the estate, and ran away to Nebraska? (Defendant objects to the question as not proper cross-examination, and as misconduct on the part of counsel in asking it.) Mr. Jamison: Misconduct. I object to being lectured. Mr. Smith: I am not lecturing, I am making a record. Mr. Jamison: That's all right; we know this man. Mr. Smith: I know what the supreme court say about such conduct. Mr. Jamison: We know this man." Again, the following, being part of the cross-examination by the plaintiff's counsel of Mr. Harvey Hogg: "Q. Did you write a single letter back to Iowa after you had stolen your father's estate, and ran off with it, for ten years? (Defendant objects as incompetent, and misconduct on the part of counsel, and as it is a repetition of practically the same remark that was made before, which we asked the court to admonish counsel for). Q. Isn't the reason you didn't write to your sister and your other rela-

tions was because of the fact you had left Iowa carrying your father's estate with you? (Defendant objects for the same reason as last above.)'' The following questions were put on cross-examination by plaintiff's counsel to the witness Harvey Hogg: "Q. Are you a Spaniard? A. No, I am not. I am a Yankee out and out, full-blooded. Q. You talk like a Spaniard. A. Yes, you do. You must have a little nigger talk about you sometimes. Q. Better to have a nigger than a Spaniard. Niggers tell the truth. A. I don't know. I have seen them steal chickens. Q. That ain't as bad as lying.'' When the plaintiff's counsel was cross-examining the defendant's witness, Mrs. Marshall, the following language was used; "Q. Well, whichever way you want it, I know you are full of venom. (Defendant's counsel objected to this statement as being improper and objectionable.) Mr. Jamison: How about her interrogatory? I suppose, representing an insurance company — Mr. Smith: I desire to take exceptions to this last remark of counsel also. Let the record show that it is improper conduct on the part of counsel. Mr. Jamison: Of course, nothing can be incompetent. Q. Was it in the winter before he died in June, 1896? A. It was some time that winter, sir, or spring. Q. Yes, which will you have it? A. Well I couldn't tell the exact time, but I remember it, sir. Q. I have no doubt, and you have treasured it ever since, haven't you? You are friendly with Mrs. Welch? A. Yes. Q. Are you ready to do her a kindness? A. Mrs. Welch was to my house. Q. And you say you are friendly with her? A. Yes, sir. Q. And ready to do a kindness to Mrs. Welch? A. Yes. Q. The kind the Spaniards do when they walk up and stab you in the back? A. Just as you will have it. (Defendant objects to the question as being improper, and misconduct on the part of the counsel, and immaterial.) Q. Are you acquainted with Mr. Eddy? A. I am. Q. Where did you get acquainted

with him? A. You mean the first time I saw him? Q. Yes. A. Well, it was two years ago last March, sir. Q. Where did you get acquainted with him? A. Why, he came to our house. (Defendant objects as irrelevant and immaterial.) Mr. Jamison: If the court please, we have reasons for connecting Mr. Eddy, and you will see, when the testimony comes here, it will be very important to us. Mr. Smith: That don't make it proper cross-examination. Mr. Jamison: It is this, your honor, I am not going to explain now, but there will be evidence here that will reflect upon Mr. Eddy very severly, and I want to show his connection with this case. Mr. Smith: I object to the statement now being made by counsel in relation to Mr. Eddy as being improper. Mr. Jamison: We will produce the testimony. The Court: The objection is overruled. (The defendant excepts.)" Again, when it was proposed to read the testimony of William Hogg that was taken upon a former trial, the following colloquy took place: "Mr. Smith: Let the record show that, in the absence of a contrary ruling, that the ruling as given upon— Mr. Jamison: We have looked up insurance companies before. This isn't the first time they have pleaded conspiracy. We have had conspiracies before. Mr. Smith: Defendant objects to the statement of counsel as improper. Mr. Jamison: Put down what Mr. Smith said. This reply is made in response to the counsel trying to get into the record something that isn't in the transcript. Mr. Smith: I simply asked if you would agree that the court's rulings heretofore made might be the rulings here, unless we called up another question. I thought it was a very proper qustion to ask. Mr. Jamison: I am pointing out that the insurance company wants to get some other grounds for appealing to the supremo court. Mr. Smith: Very well, I will take my chances on the record as it is here. Mr. Jamison: Oh, very well; I have been through this before." When Mr. Eddy, the agent of the defendant company, was on the stand, he was

asked on cross-examination by Mr. Jamison: "Q. Didn't Mrs. Welch make an application after that talk? (Defendant objects as not proper cross-examination and immaterial.) Mr. Jamison: If the court please, they put this man on here to try and cast aspersions upon everybody but himself as the only pure person. Haven't we the right to show the relations of Mr. Bell, or particularly what business he did, and Dr. Gilmore continued; and it was only after they got into this lawsuit they concluded to discharge him. Mr. Smith: Of course, after we found out the rascality. If you will put your questions to that point, we won't make objections,—if you will ask whether or not we did that after we found out the fraud practiced. Mr. Jamison: Who is talking about fraud when the attorney offers $1,000 to buy a witness? Mr. Smith: $1,000? What do you mean by that? Mr. Jamison: I will prove that by a witness here. I will bring the witness. That is right. The Court: Order. Stop. Mr. Smith: I am going to have that record down, and I am going to have my objections down to it that the defendant's attorney objects to counsel on behalf of the plaintiff charging that the defendant had offered a witness $1,000 for his testimony in this case. We object to it as improper conduct on the part of the attorney, such statement having been made in the presence of the court and jury. Mr. Jamison: It is reply. I desire to say, when we are charged with rascality, and when they make these aspersions, it was in reply to that; and when we come to introduce our case I will bring the witness and offer the testimony. If it is not admitted, it will be because of their objections. All I ask is a chance to get at the true inwardness of this company. The Court: There is another remark. Now don't repeat those." Again, when plaintiff's counsel offered to read from the transcript of the evidence upon the former trial of this case the testimony of F. A. Coyle, the following took place: "Mr. Smith: I understand Mr. Coyle is here. Mr. Jamison:

We haven't money to pay him. If you will furnish his witness fees— It is to identify a photograph. It doesn't make much difference at all, if they want him. Mr. Smith: Oh, go ahead then. I didn't know that. Mr. Jamison: Of course, there is a difference between a rich insurance company and a poverty stricken plaintiff. (Defendant's counsel objects to this statement of plaintiff's counsel as misconduct, and asks that it be made a part of record.)" When the defendant's counsel was cross-examining the plaintiff, Mrs. Welch, the following took place: "Q. What was it you were anxious to speak about the church? When was it you joined the church? (Plaintiff objected to this as not proper cross-examination. Objection sustained. Defendant excepts.) Mr. Jamison: It's bad enough to be accused of a conspiracy by an insurance company without getting other things in. (Defendant's counsel excepts to this remark as misconduct on the part of plaintiff's counsel.)" We deeply regret the necessity of setting out this record, for it is rare, indeed, that we are called upon to rebuke counsel by a reversal on account of misconduct during the trial, and learned counsel for plaintiff have heretofore been scrupulously correct in their conduct It is evidently a case where their zeal for their client overcame their judgment, and the history of the case was such as to lead them into these indiscretions. However, it will not do to tolerate such proceedings in a court of justice. A trial under such circumstances becomes a mockery, and the forum a place of unrestrained tumult and disorder. Results of such proceedings are better imagined than described, but it is almost certain they will not be judicial.

Counsel say in extenuation that they were provoked or invited into such an encounter, and that defendant cannot complain. They further say that no prejudice resulted in any event. Referring first to this last proposition, we find it hard to believe that such conduct was not prejudicial. Imagination can hardly picture a

more flagrant violation of the rules of propriety. And if there ever was a case of prejudice, this seems to us to be such an one. The conduct of counsel in *Hood v. Railway Co.*, 95 Iowa, 331, was no worse than in this case, and for misconduct of counsel we reversed that case. Some of the matters above set out were provoked, or the inquiries invited, by counsel or witnesses for defendant, but the most reprehensible were entirely uncalled for. Counsel for defendant were not wholly blameless in this matter, and it is claimed by plaintiff that they first transgressed. We do not find it necessary to settle the question as to who was the first offender. Nothing we can think of would justify some of the remarks made. While fully realizing the frailities of human nature, and how prone one is to strike back, yet we cannot approve the procedure in this case without establishing a precedent which would lead to dangerous results. A certain amount of license should be granted to one who is provoked into rash and intemperate speech; but it is far better to remain silent, and let the first offender suffer the results of his misdeeds. To announce a rule that one may go to the extent counsel did in this case because counsel on the other side also offended, would be to invite such proceedings in the future, and to cause an investigation in each case as to who in fact was the more blamable. All know how one word is likely to bring on another, and the extremes to which counsel may go if we announce the rule contended for by appellee. *State v. Helm*, 92 Iowa, 545, was reversed because counsel in argument impliedly stated that certain witnesses had been bribed; there being no evidence to support the charge. In that case we said: "That the words in question were calculated to cast odium upon the witnesses to which they had referred, and cause their testimony to have less weight with the jury than it would have had if the words had not been spoken, is, we think, evident; and, unless justified by something shown or said on the trial, they are sufficient

reasons for reversing the judgment of the district court.'
*Wheeler & W. Mfg. Co. v. Sterrett*, 94 Iowa, 158, was reversed because counsel referred to plaintiff as a soulless corporation, that could roam at will, and rob as it pleased, and that a corporation attempting to enforce the contract in suit should suffer confiscation, etc. *Henry v. Railway Co.*, 70 Iowa, 233, was reversed because counsel referred to defendant as a rich, powerful, and wealthy railroad corporation; that by the exercise of superior power and by the use of corrupt means it secured an indictment against plaintiff for the purpose of breaking down his evidence. In *Whitsett v. Railway Co.*, 67 Iowa, 159, a reversal was had because counsel said it was "easy for defendants to get witnesses. They bring fellows across the continent, and they come if they lose their jobs. That there was an employe in the case which they did not bring because he had opened his mouth, and it was unfavorable to them. They know who will testify for them, and those who will not they discharge from the road." See, also, *State v. Proctor*, 86 Iowa, 698; *Hall v. Wolff*, 61 Iowa, 559, and cases cited therein. True, in most of these cases the statements were made in argument; but we apprehend it makes no difference whether used in argument proper or by running comment, during the trial. The effect is the same in either case.

IV. Counsel further contend that many of the matters complained of should not be considered because opposite counsel did not object thereto and secure the court's ruling thereon. The general rule, no doubt, is that, in order to raise such questions, the trial court must be called upon to correct the injury done, and an exception taken to his refusal to do so. But this is not always so. As said in *Henry v. Railway Co.*, 66 Iowa, 56: "When such a question is asked, an objection by opposing counsel, even if sustained by the court, does not prevent the mischief. Whatever injury or prejudice there

may be to the opposing party is accomplished by asking the question.'' The record before us presents just such a case, and it was not necessary to show objections to every question asked and every statement made.

V.   Misconduct in argument is complained of, but, as the statements said to have been made are not properly made of record, we do not consider 'them.

VI.   Insufficiency of the evidence to support the verdict is also claimed.   In view of a retrial, it is better that we say nothing on this point.

While regetting to reverse this case on the ground above indicated because of the high character and unquestioned ability of counsel for plaintiff, we are constrained to reach the foregoing conclusions, although we do not think that counsel willfully and purposely intended to outrage the rules of decorum.

The judgment must be reversed, and the cause be remanded for a retrial.—REVERSED.