HANORA CONWAY v. HANORA MURPHY, Appellant.

Guardianship proceedings: EVIDENCE. In a proceeding for the appointment of a guardian inquiries which permit a witness to give his conclusion, as to whether the party whose business capacity is being inquired into exercised discretion, are objectionable; he should be required to state the facts.

Same: CROSS-EXAMINATION. Where a witness has expressed an opinion as to the soundness of mind of one whose mental capacity is in issue, he may be cross-examined with a view of testing the value of the opinion given.

Evidence: ADMISSIONS AND DECLARATIONS. The admissions and declarations of one who has not been adjudged incompetent are substantive evidence on the issue of his mental capacity, in a proceeding to appoint a guardian for such party.

Rebuttal evidence. Evidence of transactions between plaintiff and defendant in a guardianship proceeding are admissible in rebuttal as bearing on the question of defendant's condition of mind.

Special interrogatories. Special interrogatories must be asked and answered with reference to the issue being tried and the defi-

nitions of terms given by the court; so that the issue of unsoundness of mind, as defined by the court to mean ability to manage property, is determined by the general verdict, and a special interrogatory touching the subject should be refused.

**Non-expert evidence:** INSTRUCTION. The value of a non-expert 6 opinion that a person is of unsound mind depends upon the nature of the facts and circumstances recited as the basis of the opinion, and the jury should be directed to take into consideration such facts and circumstances in determining the weight to be given the opinion.

*Appeal from Iowa District Court.*— HON. O. A. BYINGTON, Judge.

TUESDAY, JULY 2, 1907.

ACTION for the appointment of a guardian for Hanora Murphy resulted in an order as prayed, from which she appeals.—*Affirmed.*

*J. M. Dower* and *J. B. Murphy,* for appellant.

*M. J. Wade, R. W. Pugh,* and *Thos. Stapleton,* for appellee.

LADD, J.— The jury found the condition of defendant's mind such as to render her incapable of caring for her property in a reasonably prudent manner, and, without reviewing the evidence, it will be enough to say that we deem it sufficient to sustain the verdict. Several rulings are complained of, and these will be disposed of in the order presented in argument.

I.   One Perry was asked what he had observed with reference to Mrs. Murphy being careful in paying out money, and also if he had seen anything indicating caution in spending money. The objection, as leading, incompetent, and calling for an opinion, was sustained. These inquiries left to the witness's determination what would be careful or indicate

1. GUARDIANSHIP
PROCEEDINGS:
evidence.

caution, and therefore called for conclusions. The facts within his knowledge, if any, might have been elicited, and the jury, instead of the witness, allowed to estimate their effect on the issue being tried. The ruling was correct.

II. Mrs. Kilroy, a daughter, was asked on cross-examination whether Mrs. Murphy told her " about runnning down the railroad to get away from Lucy's (another daughter) so that she would not have to give

2. SAME: cross examination.

this deed to the property." The objection as not cross-examination might well have been sustained, but the negative answer obviated any prejudice, especially in view of her testimony of Mrs. Murphy's account of the matter, given without objection. It appears that she had explained that Lucy's little girl was away visiting, and, as she thought a great deal of her, wanted to go where the child was. The witness had expressed her opinion that her mother was of sound mind, and, after telling what she understood by that term, was asked whether it would be natural for a person of sound mind, eighty years old, to go down the railroad track after a little child whose mother had allowed to stay with a friend over night in order to stay with her. Manifestly, this was to test the value of the witness's opinion. The recital was not accurate; but, in view of the pertinent answer, that it would depend on the degree of attachment between the defendant and the child, and the above account as given by Mrs. Murphy, the variance could not have worked any prejudice.

The main contention, however, is that proof of the declarations was treated as substantive evidence. The declarant was a party to the action. She had not been ad-

3. EVIDENCE: admissions and declarations.

judged insane, and her admissions and declarations were receivable in evidence under the rules applicable to other actions. Appellant seems to rely first on decisions to the effect that declarations of a testator as to what had been done or said in procuring

the execution of the will is merely hearsay as to the matter recited. See *Johnson v. Johnson,* 134 Iowa, 33. These are not in point, for the reasons already indicated. Cases also are cited in which inconsistent statements made out of court are held merely to affect the credibility of the witness. See *Eastman v. Railway Co.,* 101 Mich. 597 (60 N. W. 309). Such statements are not received as tending to show that the facts recited are true when not in issue, but as tending to show that the witness in making different statements under oath is not entitled to belief. The rule is otherwise when the admissions or declarations directly bearing on the issues being tried are sought to be proven by the adverse party. Such evidence is substantive, and to be considered in determining the issue concerning which the declarations or admissions have been made. This account by defendant of what she had done, if accepted as true, established facts somewhat inconsistent with mental soundness, and therefor tending to support the plaintiff's contention that she was incapable of transacting her own business. If not accepted by the jury, then the circumstance of laboring under the hallucination that she did such a thing might be considered for the same purpose. But there was no evidence that the story told by her was untrue, and therefore the facts recited might be assumed by the witnesses in making up their opinion as to whether she was incapable mentally to properly care for her property.

The rulings on objection to inquiries directed to Dr. Schuell are disposed of in *Bever v. Spangler,* 93 Iowa, 576. The evidence of transactions between plaintiff and defendant in rebuttal was admissible as tending to show that certain statements by the defendant were untrue, and therefore indicating unsoundness of her mind, rather than a bad motive on the part of plaintiff.

4. REBUTTAL EVIDENCE.

III. Complaint is made of the refusal of the court to submit to the jury the following interrogatory: " Is the defendant of unsound mind ? " The inquiry was answered by

the general verdict.  Appellant concedes that this would have been true of a negative answer, but argues that, even though of unsound mind, she might not have been incapacitated for properly caring for her property, and the appointment of a guardian have been unnecessary.  This suggestion ignores the thought that interrogatories are propounded, and must be answered with reference to the issues being tried and the definitions of terms given by the court.  The only issue to be determined was whether defendant's mind was unsound, and the unsoundness contemplated was defined by the court to mean inability to manage her property in a rational manner.  If her mind was unsound in any other respect, the inquiry was immaterial; if not so unsound as to require the appointment of a guardian, the verdict answered it.  Submission of the interrogatory was rightly refused.

*5. SPECIAL INTERROGATIONS.*

IV.  Appellant complains of the fifth instruction, in which the jury was told that the value of opinions of non-expert witnesses " is measured by the facts on which they are based.  If the facts disclosed by the testimony upon which the opinion is based do not sustain the opinion, then the opinion is of proportionately small weight.  If, on the other hand, the facts upon which the testimony is based sustain or tend strongly to sustain such opinion as to mental condition, then it will be entitled to proportionately greater weight.  So you will carefully consider all of the testimony of said non-expert witnesses, and, guided by the foregoing rules, give to the same such weight as you deem it justly entitled to."  This is a correct statement of the law.  The jury are to consider the facts and circumstances upon which the opinion of a non-expert is based, as well as the opinion itself, in determining the condition of the mind under investigation.  These facts and circumstances must tend to support the opinion, else it cannot be given.  Habits of observation differ as do the conditions of the subjects of inquiry.  Nec-

*6. NON-EXPERT EVIDENCE: instruction.*

essarily some opinions are better fortified by the matter recited by the witness than others. The value of an opinion, then, that a person is of unsound mind, depends upon the nature of the acts and conversations recited as the basis of such opinion, to what extent these are unnatural or unusual or not ordinarily to be anticipated from a person of such character, whether of frequent or rare occurrence, or the like. See *Stutsman v. Sharpless,* 125 Iowa, 335. This is the purport of the instruction. The criticism that it permitted consideration of the opinion of a witness, even though the jury found some of the facts on which it was based untrue, is without foundation. No reference to a finding that the facts recited were untrue is to be found in the charge, but the instruction clearly states that the value of the opinion expressed depends upon the support it has in the facts testified to by the witness, and this is the rule universally recognized. The thought of the instruction refused was incorporated in the fourth paragraph of the charge.

We discover no reversible error, and the judgment is *affirmed.*