STATE OF IOWA, Appellee, v. JOHN E. FULLER, Appellant.

**Husband and wife:** ABANDONMENT: EVIDENCE. Under a charge that
1 a destitute person is one who does not have and can not procure the necessaries of life without the intervention of charity, which must be regarded as the law of the case, the evidence is held insufficient to support a conviction of defendant for wilfully refusing to provide for his wife.

**Misconduct in argument.** The remark of counsel in argument to
2 the jury on the prosecution of a husband for wilfully neglecting to provide for his wife in an alleged destitute condition, "How many men are there whom you know and whom I know that instead of going to a literary society and pulling defendant out by the coat collar, would have gone and brought him out either with a club or gun," was prejudicial and sufficient to warrant a reversal.

**Criminal law:** CROSS-EXAMINATION OF DEFENDANT. In a criminal ac-
3 tion the cross-examination of a defendant who testifies in his own behalf must be confined to those matters testified to on his examination in chief.

*Appeal from Webster District Court.*—HON. C. G. LEE, Judge.

WEDNESDAY, MAY 12, 1909.

DEFENDANT was indicted for desertion of wife and child, and upon trial to a jury he was convicted and given an indeterminate sentence. He appeals.—*Reversed* and *remanded.*

*Healy & Healy,* for appellant.

*H. W. Byers,* Attorney General, and *Chas. W. Lyon,* Assistant Attorney General, for the State.

DEEMER, J.—The statute under which defendant was indicted reads as follows: "Every person who shall, without good cause, willfully neglect or refuse to maintain or provide for his wife, she being in destitute condition, or who shall, without good cause, abandon his or her legitimate or legally adopted child or children, under the age of sixteen years, leaving such child or children in a destitute condition, or shall, without good cause, willfully neglect or refuse to provide for such child or children, they being in a destitute condition, shall be deemed guilty of desertion and, upon conviction, shall be punished by imprisonment in the penitentiary for not more than one year, or by imprisonment in the county jail for not more than six months." The charge against him in the presentment read in this wise: "That the said John E. Fuller on or about the 19th day of June, 1907, in the county and state aforesaid, did willfully, feloniously and unlawfully, without good cause, neglect and refuse to maintain and provide for his wife, she being then and there in a destitute condition, and without good cause did then and there willfully abandon his legitimate child under the age of sixteen years, and then

and there willfully and without good cause did refuse and
neglect to provide for said child, said child being in desti-
tute condition, all contrary to law." The jury returned
a verdict of guilty, and defendant was sentenced to Ana-
mosa, according to law. Before judgment was pronounced,
defendant filed a motion in arrest of judgment based upon
the thought that the indictment is bad for duplicity, in
that it charges three distinct felonies. It was also claimed
in a motion for a new trial that the verdict has no support
in the testimony. These two propositions are the ones most
relied upon on this appeal, but it is also argued that the
court erred in its rulings on the admission and rejection
of testimony and in its instructions, and that counsel for
the state were guilty of such misconduct as entitled defend-
ant to a new trial.

The testimony showed: That the prosecutrix, Anna
Fuller, was married to defendant on April 9, 1907; that
previous thereto defendant had seduced the woman who
became his wife; and that on or about Au-
1. HUSBAND
AND WIFE:          gust 12, 1906, she became pregnant as a re-
abandonment:
evidence.          sult of sexual intercourse with the defend-
ant. Indictment was found against defend-
ant, and after several unsuccessful efforts to settle the
matter defendant married the prosecutrix. A child was
born May 20, 1907. Defendant did not live with his
wife after their marriage, but called upon her at her fath-
er's house two or three times before the child was born;
the last time being about three weeks before the accouch-
ment. After the child was born, he did not visit his wife
or contribute in any manner to the support of wife or child.
The indictment in this case was returned August 28, 1907.
Thereafter defendant did pay part of his wife's doctor bill.
Defendant was twenty-four years of age when he married
the prosecutrix, and she was twenty. Each was living with
his or her parents. Defendant had no property at the time
of his marriage, for he had always lived at home and had

received no wages, or, if he had received any, did not save them. It is conceded that either immediately following the marriage, or the day after defendant made arrangements with his wife's parents whereby she was to remain at their home until after the child was born and until she had sufficiently recovered her strength to remove from their home. It is also shown that defendant made arrangements to rent what is known as the "Bricker Place," consisting of twenty acres of land with a furnished dwelling, and that his wife, upon being informed of this arrangement, declared she would not live at such a place. Thereupon defendant canceled his arrangement with Bricker and went to Des Moines, where he was employed by an express company to drive a wagon, at which work he continued for about three weeks. He then returned to Webster County, and on June 4th, about two weeks after the birth of the child, was arrested upon a warrant issued upon an information filed before a justice of the peace by the prosecutrix's father. As a matter of fact, this information was filed by the father on the day following the marriage, although at that very time it had been arranged that the prosecutrix should stay with her parents, as above stated; but the warrant was retained by the town marshal until the 4th day of June, when it was served upon defendant. The prosecutrix, at that time, was not able to leave her bed and was being cared for by her parents, under the arrangement to which we have referred. After defendant's arrest, the prosecutrix remained at the home of her parents, and she and her child received the same support that they had theretofore received, although not by arrangement with the defendant. It is conceded, however, that both her wants and those of her child have been supplied by her parents, because of their relationship, no doubt, and that defendant has done nothing save to pay $45 upon a doctor bill of $75. Prosecutrix denies that she refused to live with defendant at the Bricker place, and we must assume that the

jury found that she did not desert defendant, her husband, by refusing to go with him to a suitable place; but, at the time defendant was arrested, the prosecutrix was being cared for by her parents under an arrangement with her mother, and she was not in any sense in a destitute condition. Moreover, defendant down to the time of his arrest, according to the uncontradicted testimony, had made arrangements for the care of his wife and child, and was not willfully neglecting or refusing to maintain or provide for either his wife or child. After that, he paid part of the doctor bill as soon as it was rendered, and devoted all of his savings down to that time toward the support of his wife. Defendant earned about $10 per week while working at Des Moines, and claimed that he borrowed the money from his father with which to make the payment on the doctor bill. He also claimed that he had made arrangements with his employer to return to Des Moines and resume his former position when he was arrested for desertion, and that he did not return to Des Moines on that account. He also claimed that he did not go to visit his wife at her parents' because he had heard that her father had made threats that he (the father) would put him off the place should he appear there for any purpose.

Under the testimony it is manifest there was no desertion at the time defendant was first arrested upon the warrant issued by the justice of the peace. At that very time, prosecutrix was being cared for by her parents pursuant to an arrangement made by defendant. She was not then in condition to leave her father's home. If there is any desertion or abandonment, it is to be found in what defendant did or failed to· do after his arrest. He did pay part of the doctor's bill, and he did not return to the home of his wife's parents for reasons already suggested. Indeed, his arrest on a warrant sworn out by his father-in-law was not such an invitation as was calculated to induce him to

visit his wife at her parents' home. True, he did nothing before the finding of the indictment toward the support of his wife or child, except to pay the $45 on the doctor's bill; but he shows that he had no earnings during the months of June, July and August after his arrest and before his indictment, which he could have used for their support. The testimony shows that, since the arrest of defendant, his wife has been treated as a member of her father's family, and that all her wants as well as those of her child have been supplied the same as before her marriage. It is not shown that she did not earn whatever was supplied to her, and, being a member of the family and capable of labor, it will be presumed that her earnings were offset by the care and support furnished. Some courts have said that a "destitute person" is one who is in distress, who has not the necessaries of life, and who is not in a position to acquire them. See *Norridgewock v. Inhabitants,* 49 Me. 385. See, also, as having some bearing upon this proposition, *State v. Stout,* 139 Iowa, 557. But, whatever the true rule, the trial court fixed the law in its sixth instruction, which reads as follows: "Within the meaning of the statute a person is in a destitute condition who does not possess and can not secure the necessaries of life without the intervention of charity. In this case, if you believe beyond a reasonable doubt that, at the time complained of, the said Anna Fuller was the wife of the defendant, and she did not possess the financial means with which to procure, or did not have the ability to earn, the necessaries of life, or that no person had assumed the obligation of furnishing her with the same, then you will be warranted in finding that the said Anna Fuller was in a destitute condition." Under this instruction there should, under the uncontradicted evidence, have been a verdict for defendant. The two paragraphs of the instruction are not inconsistent, but, as we think, perfectly harmonious.

II. In the opening argument of the case to the jury.

counsel for the State said: "How many men are there whom you know, and whom I know, that, instead of going to a literary society and pulling John Fuller out by his coat collar, would have gone and brought him out either with a club or a gun." Objections were interposed to this line of argument. The court sustained an objection, and in an instruction endeavored to eliminate the statement from the minds of the jury. We have often held that such remarks are sufficient to justify a reversal. *State v. Proctor,* 86 Iowa, 698; *State v. Helm,* 92 Iowa, 540; *Welch v. Ins. Co.,* 117 Iowa, 406; *State v. Hasty,* 121 Iowa, 520; *State v. Harmann,* 135 Iowa, 171.

2. MISCONDUCT IN ARGUMENT.

III. Code, section 5485, provides that: "When the defendant testifies in his own behalf he shall be subject to cross-examination as an ordinary witness, but the State shall be strictly confined therein to the matters testified to in the examination in chief." Although defendant's counsel interposed many objections to the defendant's cross-examination based upon this section, the objections were overruled, and the examination was permitted to cover too wide a field.

3. CRIMINAL LAW: cross-examination of defendant.

In view of these conclusions, it is not necessary to consider the other points made by appellant's counsel.

For the errors pointed out, the judgment must be, and it is, *reversed,* and the cause is *remanded.*